White, J.
The original action was in the nature of a suit in equity, brought against the Cleveland and Mahoning Railroad Company, O. M. Burke, and Joseph Perkins. The object of the action was to obtain the transfer to the plaintiffs, upon the hooks of the railroad company, of forty shares of its stock,' the original certificates for which were held by Elias Eassett, the plaintiffs’ intestate, at the time of his death, and also to obtain from the company the payment of the dividends that had accrued on the stock. If the transfer of the stock could not be obtained, the plaintiffs prayed that the company be required to account for the value of the stock and the dividends; and in the event that it should be found that the plaintiffs were not entitled to such relief against the company, that the same be decreed to them against Burke and Perkins.
A separate answer was filed by the railroad company. Burke and Perkins answered jointly; but no decree was rendered, either in favor of or against them, nor are they parties to this proceeding in error. There was a finding against them in favor of the plaintiffs; but there was no judgment or decree on such finding.
Judgment was rendered against the railroad company .alone; and the present petition in error is prosecuted by the company against the plaintiffs below, Robbins and Dunlevy, administrators of Eassett.
The principal question arising in the ease, therefore, is, whether the railroad company is liable to the administrators of Eassett, the plaintiffs below, on account of the stock; and, if so, as to the nature and extent of such liability.
*500 The duty of a corporation toward those interested in the-transfer of its shares of stock has been thus stated: “It is made the custodian of the shares, and is clothed with power to protect the rights of evei’y one from unauthorized transfers. The power thus vested in the corporation is a trust placed in its- hands for the protection of individual interests, and, like every other trustee, it is bound to-execute the trust with proper diligence and care, and is responsible for any injury sustained by its negligence or misconduct.” Lowry v. Commercial and Farmers' Bank of Baltimore, Campbell’s Rep. (Taney’s C. C. Decisions), 310.
In all such cases there may be no actual fault on the part of the corporation, yet the principle results from the justice and expediency, in such transactions, of casting the loss on those who can best provide against it. Chew et al. v. The Bank of Baltimore, 14 Md. 300.
In the present case, in addition to the statement contained upon the face of each of said certificates, that the stock mentioned therein is “ transferable upon the books of the company upon the surrender of this certificate,” a by-law of the company declared that “no new certificates shall be issued in place of any certificate previously issued, until such previous certificate shall have been surrendered and canceled, and such cancellation, with the date thereof, plainly written on the face of the certificate so surrendered.”
The original certificates in question were issued by the railroad company, on the 9th day of September, 1854, to Voce* Perkins & Co., who appeared on the books of the company as the owners of the stock. In the same year the stock was sold to Elias Fassett by Voce, Perkins & Co., who delivered to him the certificates, with blank powers of attorney, to enable him to have the stock transferred upon the books of the company. The certificates were mislaid by Fassett, and they were not discovered until December, 1871, after his death. In the meantime, on the 8th of May, 1863, the board of directors of the railroad company, on -the application of'Voce, Perkins & Co., issued to Burke or *501 to Burke and Perkins, new certificates of stock, on the supposition that the original certificates had been lost by Voce, Perkins & Co. On the application of the administrators of Eassett, for the transfer of the stock to their names, •and for an account of the dividends that had been declared ■on the stock, the company refused to make the transfer, or to account for the dividends, on the ground of the issue of ■the new certificates.
The issue of these certificates and the transfer of the stock on which they were founded, was a breach of the •duty which the company owed to Eassett as the holder of the original certificates. This breach of duty on the part of the company resulted in Eassett’s losing the stock to which he was entitled, and created a liability on the company to replace it or to account for its value.
It is claimed that the by-law which provides for the issuing of certificates by the board of directors, in place of certificates lost or destroyed, on receiving adequate security to indemnify the company against loss consequent upon the issuing of such new certificates, relieves the company of the liability which would otherwise rest upon it.
The claim is,that if new certificates are issued, upon the order of the board of directors, made in good faith, on evidence satisfactory to them of the loss of the originals, that the company is discharged from all liability to the holder of the original certificate, although it may subsequently •appear that the original certificate had been transferred, instead of lost; that the effect of the new certificate is to supersede and invalidate the original, in whosesoever hands it may be.
But, in the opinion of a majority of the court, the issuing of the new certificates, under the by-law in question, has no such effect. The by-law is prescribed by the directors, and they have no authority to determine the equitable-rights of parties to the stock of the company, should they .assume to do so. The object of the by-law is to enable persons whose certificates appear to have been lost or destroyed to obtain others, on indemnifying the company against loss, *502 in case other parties should assert rights against the company, under the original certificates. But it is not intended to affect the rights of such parties.
Whether the company is liable for the dividends paid on the stock, before they had notice of the transfer of the certificates to Eassett, depends upon other considerations.
Yoce, Perkins & Co. were the registered owners of the stock, and, by failing to have the stock transferred, Eassett consented that they might vote upon the stock, and, in the absence of notice to the company that he was the holder of the certificates, he took the risk of Yoce, Perkins & Co. drawing the dividends. Unlike the transfer of the stock,, the surrender or production of the certificates was not necessary to draw the dividends. Until the company were notified of the transfer of the certificates to Eassett, they were warranted in paying the dividends to Yoce, Perkins & Co., or to their order. And, by paying the dividends to Burke and Perkins, as purchasers under Yoce, Perkins & Co., the company are as fully protected as if the payments, had been made to Yoce, Perkins & Co., directly.
The railroad company also relies on the statute of limitations. •
• The answer sets up that the cause of action did not accrue within four years from the commencement of the action. The claim made in support of the plea is that the cause of action accrued at the time of the transfer of the stock to Burke and Perkins, on the 8th day of May, 1863.
We can not assent to this view. The certificates stated, in effect, that the stock would be transferred on the books of the company, upon the surrender of the certificates. Upon this statement of the company, the holder of the certificates had a right to rely, until the transfer was refused, or he had notice that the stock had been transferred to. other parties.
In the present case, the transfer was refused on the 3d of' April, 1872. Eassett, in his lifetime, had no notice of the transfer of the stock to other parties, nor had his administrators such notice, until a few months before the refusal *503 of the company to allow the transfer to be made to them* and, on the 10th day of August, 1872, the action was commenced.
As Burke and Perkins are neither of them before us on this proceeding in error, we express no opinion as to their liability.
The findings of the court below do not distinguish between the value of the stock and the aggregate value of the stock and dividends. The entire judgment must therefore be reversed; and the cause is remanded to the district, court for further proceedings.